Filed 4/27/16  P. v. Oviedo CA4/2
See Dissenting Opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063216 |
| v. | (Super.Ct.No. RIF1105870) |
| JESSE OVIEDO, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Marvin E. Mizell and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Jesse Oviedo, filed a petition for resentencing pursuant to Penal Code section 1170.18,[1] which the court denied. On appeal, defendant contends the court erred in denying his petition. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On June 29, 2012, the People charged defendant by information with six counts of second degree burglary (§ 459, counts 1-4, 7, & 9), unlawfully obtaining personal identifying information for the purpose of obtaining value (§ 530.5, count 5), and two counts of signing the name of another person for the payment of money (§ 470, subd. (a), counts 6 & 8). The People additionally alleged defendant had suffered a prior strike conviction. (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).)

On December 19, 2013, defendant pled guilty to one count of second degree burglary and admitted the prior strike conviction. In return, all remaining charges were dismissed and the People agreed to a sentence consisting of the low term of 16 months, doubled to 32 months pursuant to the prior strike conviction.

The court asked defendant if it was "true that on October 7th, 2011, in the County of Riverside, you went into a place in Norco with the idea to commit a theft or some felony inside; is that true?" Defendant answered, "Yes." Defendant's plea agreement reflects that the factual basis for the plea consisted of defendant's agreement that he "did the things that are stated in the charges that I am admitting." The minute order reflects that the court found the "factual basis for the plea is based on [the] Oral Statement [of]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Defendant on the record." On February 7, 2014, the court sentenced defendant to 32 months' incarceration.

On November 18, 2014, defendant filed a petition for resentencing. On December 19, 2014, the People filed a response stating defendant was ineligible for resentencing pursuant to section 1170.18 because his burglary was not of a commercial establishment.

On February 27, 2015, the People filed a formal opposition to defendant's motion in which they recounted the facts pertaining to the initial charges filed against defendant. According to the People, defendant had entered the office of a temporary employment agency on three separate occasions on three separate dates identifying himself as the victim and requesting the victim's paychecks in the amounts of $231.83, $178.86, and $128.00, respectively. Thereafter, when the victim came to pick up his paychecks, agency personnel discovered they had given the paychecks to the wrong person. On a fourth date, defendant entered the agency's office and requested another of the victim's paychecks, at which time agency personnel called the police and defendant was arrested.

The People argued that the temporary employment agency did not meet the definition of a "commercial establishment" such that defendant would be entitled to resentencing pursuant to section 1170.18 for a misdemeanor conviction under the newly-created crime of shoplifting under section 459.5. On March 13, 2015, defendant filed a formal reply in which he maintained that the temporary employment agency qualified as a "commercial establishment" under the shoplifting statute such that defendant should be resentenced to the misdemeanor offense.

3

At the hearing on the petition on March 13, 2015, the court stated: "[W]hen you use the word 'shoplifting,' you get the vision of somebody going into Walmart and stealing a, you know, box of Tide or whatever, but the question is how much farther than the clear-cut case of going into a retail store and stealing something does the word 'shoplifting' reach. And one parameter is commercial establishment, which could well include a bank. [¶] But this is another step. This is an employment agency where the gentleman goes in and claims he's somebody else and gets their check. So I'm ruling that's beyond even [an] expanded definition of commercial establishment, and, therefore, the motion is denied."

## II. DISCUSSION

Defendant contends the court erred in declining to recharacterize, pursuant to section 1170.18, defendant's conviction for second degree burglary as a misdemeanor conviction for shoplifting under section 459.5. Thus, defendant contends the court erred in denying his motion for resentencing. We disagree.

"'On November 4, 2014, the voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47), which went into effect the next day. [Citation.]' [Citation.] 'Proposition 47 makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors).' [Citation.] To this

4

end, Proposition 47 . . . added sections 459.5 . . . and 1170.18 to the Penal Code . . . .

[Citation.]" (*People v. Contreras* (2015) 237 Cal.App.4th 868, 889-890.)

"Section 459.5 defines the crime of 'shoplifting.'  It provides, in relevant part: '(a)  Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary.  Shoplifting shall be punished as a misdemeanor . . .  [¶]  (b)  Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting.  No person who is charged with shoplifting may also be charged with burglary or theft of the same property.'" (*People v. Contreras*, *supra*, 237 Cal.App.4th at pp. 890-891.)  Section 459.5 does not define "commercial establishment."

"'Proposition 47 also created a new resentencing provision:  section 1170.18.  Under section 1170.18, a person "currently serving" a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47.  [Citation.]  A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an

5

unreasonable risk of danger to public safety." [Citation.]' [Citation.]" (*People v. Contreras*, *supra*, 237 Cal.App.4th at p. 891.)

"""'In interpreting a voter initiative . . . we apply the same principles that govern statutory construction. [Citation.] Thus, 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.]"' [Citations.] '"The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" [Citation.] In other words, "our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure."' [Citation.] Our review is de novo. [Citation.]" (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1113-1114.)

"A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E.W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn. 2; see also *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word" (construing statutory term)]; *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 30, fn. omitted ["It is thus safe to say that the 'ordinary' sense of a word is to be found in its dictionary definition."].)

In *In re J.L.*, the minor argued that his conviction for felony burglary based on his theft of a cell phone from a school locker should have been reduced to misdemeanor shoplifting pursuant to section 1170.18. (*In re J.L.*, *supra*, 242 Cal.App.4th at p. 1113.) The court disagreed, holding that: "Whatever broader meaning 'commercial establishment' as used in section 459.5 might bear on different facts, [the minor's] theft of a cell phone from a school locker room was not a theft from a commercial establishment." (*Id.* at p. 1114.) The court reasoned that: "Giving the term its commonsense meaning, a commercial establishment is one that is primarily engaged in commerce, that is, the buying and selling of goods or services. That commonsense understanding accords with dictionary definitions and other legal sources. [Citations.]" (*Ibid*.) "We believe the voters enacting Proposition 47 understood the reference to 'shoplifting' in the voter information guide materials, including in the title and text of section 459.5, in the same way. Shoplifting is commonly understood as theft of merchandise from a store or business that sells goods to the public. [Citations.]" (*Id*. at pp. 1114-1115.)

We agree with *In re J.L.* that the intent behind the enactment of the section 459.5 misdemeanor crime of shoplifting was to punish the purloining of goods from a retail establishment. (Webster's 3d New Internat. Dict. (2002) p. 456 ["commercial" means "occupied with or engaged in commerce" and "commerce" means "the exchange or buying and selling of commodities esp. on a large scale"]; The Oxford English Reference Dict. (2d ed. 1996) p. 290 [defining "commerce" as "financial transactions, esp. the

7

buying and selling of merchandise, on a large scale"]; Black's Law Dict. (10th ed. 2014) p. 325, col. 2 ["commercial" means "[o]f, relating to, or involving the buying and selling of goods; mercantile"]; *People v. Cochran* (2002) 28 Cal.4th 396, 404-405 [citing the dictionary definition of commerce as "'[t]he buying and selling of goods, especially on a large scale,'" in interpreting the statutory phrase "'commercial purpose'"]; *People v. Contreras*, *supra*, 237 Cal.App.4th at p. 872 [defendant convicted of shoplifting under § 459.5 for stealing seven pairs of jeans from a "retail store"]; *People v. Gonzales* (1965) 235 Cal.App.2d Supp. 887, 892 [describing shoplifting as "the practice whereby customers enter a turnstile, have free access to all the shelves displaying wares and merchandise, and the proper payment for merchandise taken away from the store depends upon the customer properly declaring it at the check-out or cashier's stand."] .)

Indeed, "shoplift" is a compound word that when deconstructed consists of the words "shop" and "lift." A "shop" is commonly interpreted as a retail establishment involved in the sale of goods. To "lift" something is to steal it, either surreptitiously or brazenly by taking the object and dashing outside the "shop." (Black's Law Dict., *supra*, p. 1598, col. 1 [defining shoplifting as the "[t]heft of merchandise from a store or business; specif., larceny of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use without paying the purchase price."].)

8

Here, the temporary employment agency was not a commercial establishment for purposes of the shoplifting statue because it was not engaged in the buying and selling of goods. The court properly denied defendant's petition for resentencing.

### III. DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER           

J.

I concur:

RAMIREZ          

          P. J.

[*People v. Ovieda*, E063216]

MILLER, J., Dissenting.

I respectfully dissent. The trial court rejected defendant's petition to recall his sentence (Petition) based solely on its determination that a temporary employment agency was not a commercial establishment. I disagree with the majority's determination upholding the trial court's decision and conclude that a temporary employment agency could properly be considered a commercial establishment within the meaning of shoplifting, as that term is defined in Proposition 47. I would remand to the trial court in order for the trial court to review defendant's plea and consider whether he should be resentenced to misdemeanor shoplifting under Penal Code section 459.5.

Proposition 47 added Penal Code section 1170.18. Subdivision (a) of Penal Code section 1170.18, provides in pertinent part, "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act." Under Penal Code section 1170.18, subdivision (b), the trial court first determines whether the petition has presented a prima facie case for relief under

1

Penal Code section 1170.18, subdivision (a). If the petitioner satisfies the criteria in subdivision (a), then he will be resentenced to a misdemeanor, unless the court, within its discretion, determines the petitioner would pose an unreasonable risk to public safety. (Pen. Code, § 1170.18, subd. (b).)

Section 459.5 was added to the Penal Code by Proposition 47 and provides, "[n]otwithstanding [Penal Code s]ection 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." "Commercial establishment" was not defined.

Because the term "commercial establishment" was not defined in the ballot initiative and is not defined in the Penal Code, we begin with the words themselves, giving them their ordinary meaning. "A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute." (*E.W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn.2; see also *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word"]; *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 30, fn. omitted ["It is thus safe to say that the 'ordinary' sense of a word is to be found in its dictionary definition"].)

The Merriam-Webster Online Dictionary (2016) provides a simple definition for commerce as follows: "activities that relate to the buying and

2

selling of goods and services." (<http://www.merriam-webster.com/dictionary/commerce> [as of Apr. 27, 2016].) The full definition includes, "the exchange or buying and selling of commodities on a large scale involving transportation from place to place." (*Ibid.*) "Commodity" is simply defined as, "something that is bought and sold" or "something or someone that is useful or valued." (<http://www.merriam-webster.com/dictionary/commodities> [as of Apr. 27, 2016].)

Black's Law Dictionary defines establishment as, "2. An institution or place of business." (Black's Law Dict. (8th ed. 2004) p. 586, col. 1.) Commerce is defined as, "The exchange of goods and services, esp. large scale involving transportation between cities, states, and nations." (*Id.* at p. 285, col. 2.)

In 37 Code of Federal Regulations part 258.2 (2014), pertaining to copyright law, commercial establishment is defined as "an establishment used for commercial purposes, such as bars, restaurants, private offices, fitness clubs, oil rigs, retail stores, banks and financial institutions, supermarkets, auto and boat dealerships, and other establishments with common business areas[.]"

In *In re J.L.* (2015) 242 Cal.App.4th 1108, 1114, the court found that stealing a cellular telephone from a school locker did not qualify for resentencing under Proposition 47. It determined that, "[w]hatever broader meaning 'commercial establishment' as used in [Penal Code] section 459.5 might bear on different facts, [the defendant]'s theft of a cell phone from a school locker room was not a theft from a commercial establishment." Thereafter, the court defined

3

commercial establishment as follows: "Giving the term its commonsense meaning, a commercial establishment is one that is primarily engaged in commerce, that is, the buying and selling of goods or *services*." (*Ibid*, italics added.)

I conclude that commercial establishment is reasonably interpreted to include those businesses engaged in the buying and selling of services. A temporary employment agency is engaged in the buying and selling of services. I note that in their respondent's brief, the People made no argument to the contrary, essentially conceding that a temporary employment agency is a commercial establishment.

I disagree with the majority's conclusion that a commercial establishment must be engaged in the buying and selling of goods. The majority relies upon the common understanding of the term "shop" and "lift." However, the voters approved Proposition 47, which provides a definition of shoplifting that is different from the ordinary meaning. The term "commercial establishment" is reasonably interpreted to include the buying and selling of goods and *services*. As such, the trial court erred by determining that the temporary employment agency was not a commercial establishment.

The majority does not address the People's further argument that defendant entered the employment agency with two intents: to commit a felony (identity theft) and theft. The People insist that defendant's entry with the intent to commit identify theft constitutes a felony even after the enactment of Proposition 47.

4

Defendant has responded that when he entered his plea in open court, he pleaded guilty to second degree burglary based on his entry with the intent to commit theft *or* a felony. The nature of a plea is a factual question that must first be decided by the trial court. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892 ["The trial court's decision on a [Penal Code] section 1170.18 petition is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief"].)

The trial court did not address whether defendant entered the employment agency with the intent to commit larceny.

I would remand this matter in order for the trial court to review the plea and record of conviction to determine if defendant is eligible for resentencing under Proposition 47.

MILLER _____
                                    J.

5